UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASPEN TECHNOLOGY, INC., | § | |
| | § | |
| AspenTech, | § | |
| v. | § | |
| | § | Case No. 4:10-cv-1127 |
| TEKIN A. KUNT, and M3 | § | |
| TECHNOLOGY, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion to Sever or, Alternatively, for Separate Trials (Doc. No. 101). After considering the Motion, all responses thereto, the oral arguments of counsel, and the applicable law, the Court is of the opinion that the Motion should be denied.

## I.   BACKGROUND

This is a case involving Plaintiff AspenTech's claims against Dr. Kunt, a former employee, and M3 Technology, Inc. ("M3"), Dr. Kunt's new employer (collectively, the "Defendants"). AspenTech and M3 are competitors who create, among other things, planning, scheduling, and integrated software technology for the petroleum market. (Second Am. Compl. at ¶¶ 8, 16.) AspenTech alleges that Dr. Kunt played an integral role in the development, implementation, deployment and support of many of its software products during the course of his thirteen-year employment at AspenTech. (*Id.* at ¶ 29.) In 1997, Dr. Kunt entered into a Confidentiality and Non-Competition Agreement (the "Agreement") with AspenTech.[1] (*Id.* at ¶ 35.) The Agreement contained two clauses: (1) a confidentiality clause (or "non disclosure clause") that requires Dr. Kunt to maintain the confidentiality of AspenTech's confidential and

---

[1] M3 and Dr. Kunt contest the enforceability of the Agreement. (Second Am. Compl. at ¶ 45; Def. Tekin A. Kunt's Answer to Pl.'s Second Am. Compl. at ¶ 45.)

proprietary information; and (2) a non-compete and non-solicitation clause that prevents Dr. Kunt from developing competing products or soliciting AspenTech's clients. (*Id.* at ¶ 36.) AspenTech alleges that Dr. Kunt had almost unlimited access to AspenTech's trade secrets and had significant involvement with AspenTech's customers during his employment there. (*Id.* at ¶ 30.) AspenTech avers that Dr. Kunt, since departing from AspenTech and joining M3, is and has been using AspenTech's trade secrets to assist M3 to develop competing technology and to solicit AspenTech's customers. Specifically, AspenTech claims that it has reason to believe that Defendants are soliciting at least one of AspenTech's clients, Customer A, in order to persuade this client to leave AspenTech and do business with M3. (*Id.* at ¶ 11.)

In its original complaint, AspenTech brought the following claims for relief against Dr. Kunt: (1) breach of covenant not to compete; (2) breach of contract; (3) misappropriation of trade secrets; and (4) a request for a declaratory judgment against Dr. Kunt that the Agreement is valid and enforceable. (Orig. Verified Compl. at 12-14.) In addition, AspenTech moved for a temporary restraining order and preliminary injunction to prevent Dr. Kunt from violating the non-disclosure and non-compete clauses of the Agreement. (*Id.* at 14-15.) After this Court's grant of a preliminary injunction pending the completion of an evidentiary hearing, the parties agreed to an amended preliminary injunction that prevented Dr. Kunt from competing with AspenTech or disclosing its confidential and proprietary information. (Doc. No. 91.) The agreed preliminary injunction expires on January 5, 2011, with the exception of terms relating to "planning technology," which expire on March 30, 2011 or the issuance of a final judgment (whichever is earlier). (*Id.* at 3.)

In June 2010, AspenTech was granted leave to file an amended complaint, which added M3 as a defendant and asserted the following additional claims for relief against M3:

Count One: Breach of covenant not to compete against Dr. Kunt;
Count Two: Breach of contract against Dr. Kunt;
Count Three: Tortious interference with contractual and business relations against M3;
Count Four: Misappropriation of trade secrets against Dr. Kunt and against M3;
Count Five: Copyright infringement against M3; and
Count Six: Declaratory judgment against Dr. Kunt that the Agreement is valid and enforceable.

(Second Am. Compl. at 19-24.) AspenTech filed a second amended complaint in July 2010, but in it, did not add any causes of action or defendants to the case. AspenTech now seeks to sever from the second amended complaint Counts 4, 5, and a portion of Count 3 from the remaining claims for relief. The motion has been fully briefed, orally argued at a hearing held on December 16, 2010, and is ripe for disposition.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 21 provides that a court may "sever any claim against a party." Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). Courts have considered the following factors when deciding to sever a claim:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Amie v. City of Jennings, La.*, Case No. 2:03CV2011, 2005 WL 3007009, *2 (W.D. La. Nov. 8, 2005) (citing *Morris v. Northrop Grumman Corp.,* 37 F. Supp. 2d 556, 580 (E.D.N.Y.1999)); *see also Shifferaw v. Emson USA*, Case No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, *1 (E.D. Tex. Mar. 18, 2010). "Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the

resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

Alternatively, under Federal Rule of Civil Procedure 42(b), "a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" may be ordered "[f]or convenience, to avoid prejudice, or to expedite and economize." However, "separation of issues is not the usual course that should be followed." *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976). "[T]here is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (quoting *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965)). The limitation recognizes that, inherent in the Seventh Amendment's guarantee of a trial by jury, is the "general right of a litigant to have only one jury pass on a common issue of fact." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978). There is the "additional, pragmatic" consideration that, "if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results." *McDaniel*, 987 F.2d at 305; *Blue Bird Body Co.*, 573 F.2d at 318. In contrast to severance under Rule 21, an order for separate trials under Rule 42(b) will result in a single judgment that may not be appealed until the end of both trials. *See McDaniel* at 304 n.19.

The party seeking severance under Rule 21 or separate trials under Rule 42(b) bears the burden of proving that such action is necessary. *See Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*, Civ. Action No. C-10-142, 2010 U.S. Dist. LEXIS 70743, *6, *9 (S.D. Tex. July 14, 2010) (citing *Baergas v. City of New York*, Case No. 04 Civ. 2944 (BSJ) (HBP), 2005 U.S. Dist.

LEXIS 18785 (S.D.N.Y. 2005), and *Houston McLane Co. v. Conn. General*, Civ. Action No. H-06-1508, 2006 U.S. Dist. LEXIS 77653 (S.D. Tex. 2006)).

## III.   ANALYSIS

AspenTech claims that, despite the cooperative and expedited discovery process in which it has exchanged source code with M3, it will be unable to complete the necessary analysis of the source code by the current trial date of April 4, 2011. Therefore, AspenTech requests severance from the second amended complaint or a separate trial of Count 4 [misappropriation of trade secrets], Count 5 [copyright infringement], and the portion of Count 3 [tortious interference with business/contract relations] relating to AspenTech's confidential information. (Doc. No. 101 at 1.) AspenTech characterizes these claims for relief as the "Code Claims" because they purportedly relate solely to AspenTech's allegations that M3, Dr. Kunt, and other former AspenTech employees who later joined M3, have misappropriated AspenTech's trade secrets and infringed upon AspenTech's copyrighted material. (*Id.* at 1, 7.) AspenTech contends that Count 1 [breach of covenant not to compete], Count 2 [breach of contract], Count 6 [request for declaratory judgment] and the portion of Count 3 relating to non-compete clause in the Agreement focus on Dr. Kunt's alleged breach of the Agreement. (*Id.* at 1.) The Agreement-related causes of action should be tried in April 2011, and the Code Claims tried subsequently to allow time for a complete source code analysis. (*Id.* at 2.)

Dr. Kunt and M3 contend that the same underlying factual allegations—the purported misuse of AspenTech's confidential information—underlie all of the claims for relief. (Doc. No. 102 at 1.) Therefore, either severance or separate trials would undermine judicial efficiency, cause delay, prejudice Defendants, and violate Defendants' Seventh Amendment rights.

### A.  Severance under Rule 21

1. **Whether the claims arise out of the same transaction or occurrence; whether the claims present some common questions of law or fact; whether different witnesses and documentary proof are required for the separate claims**

AspenTech argues that the primary issues and evidence presented in a trial of the Code Claims will be markedly different from those presented in a trial of the Agreement-related claims. Specifically, AspenTech argues that Counts 1, 2, 3, and 6 arise out of the Agreement, its non-disclosure and non-compete clauses, and whether Dr. Kunt breached the Agreement. Dr. Kunt and AspenTech will be the primary witnesses, according to AspenTech, and the documentary evidence will relate to the work Dr. Kunt has done at M3 since January 2010. In contrast, the Code Claims are characterized as involving a different set of facts and issues, including the existence of a valid copyright and the copying of copyrighted material. AspenTech asserts that experts and product developers at AspenTech and M3 will be primary witnesses for the Code Claims, though they do not exclude the possibility that Dr. Kunt may be a witness. The source code will serve as evidence in the Code Claims. AspenTech acknowledges that Count 3, M3's alleged tortious interference with contractual and business relations, presents a potential overlap between the Code Claims and the Agreement-related claims. One such scenario is that, if it is discovered that M3 directed Dr. Kunt to use AspenTech's trade secrets for the benefit of M3, M3's actions could constitute both trade secret misappropriation (a Code Claim) and tortious interference with the non-disclosure clause of the Agreement (an Agreement-related claim). AspenTech contends that the solution to this overlap is to split Count 3 into two different issues: the confidentiality/non-disclosure aspects of the cause of action would be tried with the Code Claims, while the non-compete aspects would be tried with the Agreement-related claims. M3 and Dr. Kunt argue in response that the same conduct—Dr. Kunt's alleged misuse of

AspenTech's trade secrets—is at issue in both the Code Claims and the Agreement-related claims. Therefore, the claims cannot be separated.

The Court agrees with Defendants that the Code Claims and the Agreement-related claims present common questions of fact, partially arising out of the same occurrences, and involving the presentation of the same witnesses. AspenTech has alleged that Dr. Kunt disclosed, used, and misappropriated AspenTech's "confidential and proprietary information, including its trade secrets" by sharing them with M3. (Second Am. Compl. ¶¶ 85, 90.) AspenTech acknowledges that these alleged facts, among others, have given rise to the following causes of action: Count 1: breach of covenant not to compete against Dr. Kunt; Count 2: breach of contract against Dr. Kunt; and Count 6: request for declaratory judgment of the Agreement's validity and enforceability. (*Id.* at ¶¶ 79-97, 110-14.) AspenTech also concedes that Count 3, M3's tortious interference with contractual and business relations, is based on Dr. Kunt's misappropriation of AspenTech's trade secrets and disclosure of them to M3. (Doc. No. 101 at 4.) Finally, even though AspenTech has argued to the contrary, the factual allegations regarding Dr. Kunt's alleged misuse of information underlie Count 4, trade secret misappropriation by Dr. Kunt and M3, and Count 5, copyright infringement by M3. This connection is borne out by the Second Amended Complaint, which clearly outlines the basis for the trade secret misappropriation claim and the copyright infringement claim as Dr. Kunt's alleged use and disclosure of AspenTech's confidential information. (Second Am. Compl. ¶¶ 98-109.) Thus, the same occurrences—Dr. Kunt's actions with respect to AspenTech's information—underlie all the causes of action. The presence of Dr. Kunt among all the causes of action outweighs the presence of some occurrences or transactions involving other former AspenTech employees that are cited additionally as a basis for Counts 4 and 5 of the complaint. (*Id.* at ¶¶ 100, 106.)

As a result, the claims for relief present common questions of fact and will likely involve the presentation of the same witnesses and documentary evidence. If the claims are severed, Dr. Kunt would not only have to testify in the trial of the Agreement-related claims as to his use of AspenTech's confidential information, he would also have to testify in the Code Claims trial regarding the same activity. Such testimony appears necessary because his actions have been cited as the basis, at least in part, of AspenTech's trade secret misappropriation and copyright infringement claims.

AspenTech relies on *Shifferaw v. Emson USA* as support for severance in cases where one set of claims is "peripheral" to the second set of claims. 2010 WL 1064380 at *3. In *Shifferaw*, the district court found that severance of a plaintiff's patent infringement claims against a defendant manufacturing company from the plaintiff's claims against the retailer of the allegedly infringing product was appropriate. The court held that "a patent infringement claim against a retailer is peripheral to the claims against the manufacturer." *Id.* However, the distinction between the actions of Defendants M3 and Dr. Kunt cannot be drawn as easily as the *Shifferaw* court distinguished among the manufacturer and retailer defendants in its case. Rather, both M3 and Dr. Kunt are accused of misappropriating AspenTech's trade secrets. Without an examination of both parties' roles in the handling of AspenTech's confidential information, no complete determination can be made of Dr. Kunt's alleged breach of contract, M3's alleged tortious interference in the Agreement, and both parties' trade secret misappropriation. Moreover, Dr. Kunt's alleged mishandling of AspenTech's confidential information is not "peripheral," but rather central to the trade secret misappropriation claims.

Similarly, in *Reid v. Gen. Motors Corp.*, 240 F.R.D. 260, 263 (E.D. Tex. 2007), the court believed that severance was warranted because allegations of patent infringement were based on

different acts by different defendants. Here, the same alleged acts—Dr. Kunt's handling of AspenTech's confidential information—underlie all the causes of action and cannot be disentangled from M3's actions with respect to that same information.

## 2. Whether settlement of the claims or judicial economy would be facilitated

AspenTech argues that severance would serve judicial economy by disposing quickly of the Agreement-related claims without rushing the analysis of the source code that is the subject of the Code Claims. AspenTech believes that, if severance is not granted, it will have to request an extension of the preliminary injunction.[2] By granting a severance now, judicial resources will be conserved by avoiding this motion practice and the completion of the preliminary injunction hearing that was cut short when the parties stipulated to an agreed preliminary injunction. In addition, AspenTech points out that this is a relatively new case, filed in April 2010. Finally, AspenTech argues that severance would simplify the issues for trial and prevent juror confusion, which would benefit all parties.

Though the Court agrees that a continuance would be appropriate to allow the parties to finish their source code analysis, AspenTech has not requested this relief at this time. AspenTech instead characterizes the savings to judicial economy as the avoidance of motion practice and a hearing relating to the preliminary injunction. However, the potential cost of *anticipated* motion practice does not outweigh the certain cost and commitment of judicial resources to two separate cases, and consequently two trials, resulting from a severance.  This case is unlike the one presented in *CVI/Beta Ventures*, where claims of patent infringement involving two separate patents were severed in order to avoid jury confusion. 896 F. Supp. 505 (D. Md. 1995). The jury in *CVI/Beta Ventures* would have been required to consider "separate eyeglass frames, separate

---

[2] Implicit in this representation is AspenTech's intention to request a continuance of the trial date.

patent claims and specifications, separate file histories, and separate affirmative defenses," *id.* at 507, while a jury in this case will focus on the actions of Dr. Kunt, M3, and potentially other former AspenTech employees, as well as the source code. Thus, the Court does not find that judicial economy would be facilitated by severance.[3]

### 3.   Whether prejudice would be avoided if severance were granted

AspenTech argues that, if the Code Claims are not severed, it will be prejudiced. Either AspenTech will be required to rush the preparation of its Code Claims for the current trial date of April 4, 2011, or it will have to request a continuance of the trial date and allow the preliminary injunction preventing Dr. Kunt from developing competing software for M3 to expire. (Doc. No. 101 at 2.) AspenTech believes that any hardship Dr. Kunt faces as a result of having to be involved in two trials is outweighed by the benefits of litigating the Agreement-related claims and determining the tasks that Dr. Kunt can perform at M3 now. (*Id.*) M3 and Dr. Kunt argue in response that AspenTech's fears of prejudice are unfounded because the terms of the preliminary injunction protect AspenTech.[4]

The preliminary injunction either maintains or extends the non-disclosure and non-compete protections that AspenTech obtained via the Agreement with Dr. Kunt. The Agreement contained two key clauses. First, a confidentiality clause (or "non disclosure clause") in paragraph 1 requires Dr. Kunt to maintain the confidentiality of AspenTech's confidential and proprietary information. (Second Am. Compl. at ¶ 38.) Under the terms of the Agreement, the non-disclosure restriction remains effective after Dr. Kunt's departure from AspenTech and does not have a termination date. (*Id.*) Second, a non-compete and non-solicitation clause in paragraph

---

[3] The parties have not argued whether settlement of claims would be facilitated by severance, but Dr. Kunt's counsel argued at the December 16, 2010 hearing that Dr. Kunt was opposed to the motion to sever in part due to the negative effect that severance would have on the lawsuit's potential for settlement. (Tr. at 8:11-10:11.)
[4] In addition, M3 and Dr. Kunt argue that they will be prejudiced by either severance or separate trials. Since their objections revolve around Seventh Amendment concerns, they will be discussed in relation to Rule 42(b).

4 prevents Dr. Kunt from developing competing products or soliciting AspenTech's clients. (*Id.* at ¶ 37.) Under the terms of the Agreement, the non-compete and non-solicitation restrictions are effective only for 12 months after Dr. Kunt's departure from AspenTech. (*Id.*) Dr. Kunt officially left AspenTech on January 6, 2010. (*Id.* at 42.) Therefore, the non-compete and non-solicitation clause would have expired on or about January 5, 2011.

However, the agreed preliminary injunction provided the same or additional protection to AspenTech as the Agreement did. First, the agreed preliminary injunction confirms Dr. Kunt's obligations under the confidentiality clause of the Agreement and, like the Agreement, does not impose a termination date on Dr. Kunt's non-disclosure obligations. (Doc. No. 89 at 2.) Second, Dr. Kunt's obligations under the non-compete/non-solicitation clause of the Agreement are split into two separate areas of technology: (a) "non-planning technology" – Dr. Kunt is restrained from working on this technology until January 5, 2011; and (b) "planning technology" – Dr. Kunt is restrained from working on this technology until March 30, 2011. (*Id.* at 2-3.) In the case of "planning technology," AspenTech has received three months more non-compete protection than it would have received under the Agreement.

AspenTech now argues that it is impossible for Dr. Kunt to abide simultaneously by the non-disclosure provision of his Agreement while also competing with AspenTech once the non-compete and non-solicitation provisions lapse completely on March 30, 2011. The apparent prejudice to AspenTech is the lack of a preliminary injunction keeping the non-compete and non-solicitation provisions in place should the Court deny severance but allow a continuance of the trial beyond April 2011. However, the agreed preliminary injunction currently in place clearly protects AspenTech from disclosure by Dr. Kunt of its confidential information. Should AspenTech discover that Dr. Kunt is in breach of the mandatory restrictions on disclosure

imposed by the preliminary injunction, it can move for appropriate relief. Similarly, if AspenTech believes that an extension of the non-compete and non-solicitation restrictions in the preliminary injunction is necessary, it may move for such a modification of the injunction.

The Court concludes that AspenTech has not met its burden in demonstrating that severance of the Code Claims from the Agreement-related claims is warranted.

### B. Separate Trials under Rule 42(b)

AspenTech argues that separate trials should be ordered for the same reasons that severance of the claims is warranted. Defendant argues that separate trials would violate it rights under the Seventh Amendment to have one jury pass on common issues of fact.

The Court finds that separate trials are not warranted under Rule 42(b). A prerequisite to an order for separate trials is "separate issues" within the case. Fed. R. Civ. P. 42(b); *McDaniel*, 987 F.2d at 305 ("[T]he issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice."). For the reasons stated above, common questions of fact exist as to Dr. Kunt's handling of AspenTech's confidential information. These factual questions underlie all of the causes of action, including the alleged breach of contract and trade secret misappropriation, making it difficult to try some claims separate from the others. Factual questions regarding Dr. Kunt's or M3's liability for breach of contract and/or trade secret misappropriation will likely be presented to two separate juries if the causes of action are separated in the manner that AspenTech requests, thereby violating Defendants' Seventh Amendment rights. *See Mullen v. Treasure Chest Casino*, 186 F.3d 620, 628 (5th Cir. 1999) (quoting *Cimino v. Raymark Industries, Inc.,* 151 F.3d 297, 320 n.50 (5th Cir. 1998)) (bifurcation is appropriate "as long as the 'the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries.'").

IV.    **CONCLUSION**

Plaintiff's Motion to Sever or, Alternatively, for Separate Trials (Doc. No. 101) is

**DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this _10th_ day of January, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

13